SPRING and others *v.* DOMESTIC SEWING-MACHINE Co.

*(Circuit Court, D. New Jersey.* November 18, 1881.)

1. LETTERS PATENT—LATHES FOR TURNING IRREGULAR FORMS.

The machine covered by letters patent issued to Charles and Andrew Spring, May 10, 1859, for an improvement in lathes for turning irregular forms, is not anticipated by the Pernot machine.

2. COMITY.

In patent cases a circuit court will follow a previous decision, rendered by the court of another circuit, where the same patent was a subject of controversy, only when the evidence that has been introduced in the two cases is substantially the same.

3. INFRINGEMENT—MEASURE OF PROOF.

Very slight proof of infringement is sufficient.

*eorge E. Betton* and *Geo. S. Boutwell,* for complainants.

*John Dane, Jr.,* for defendant.

Before McKENNAN, C. J., and NIXON, D. J.

NIXON, D. J. The question of the validity of the patent on which this suit was brought was before the learned judges of the first circuit (Clifford and Lowell) at the term of October, 1874. It was there held that the complainants' patent was a valuable and ingenious improvement in lathes for turning irregular forms; that Charles and Andrew Spring were original and meritorious inventors of the said improvement; but that the patent should be declared void in view of the fact that the testimony showed that they were not the first inventors; that the patent was for a combination, all the elements of which were old; and that the same was anticipated by the machine of one Pernot, proved to have been made in New York, and operated there for several years in the manufacture of large quantities of sewing-machine needles. *Spring* v. *Packard,* 7 O. G. 341.

The great respect which we entertain for the opinion of that court, as well as interstate comity, would readily lead us to accept its decision as controlling this case, if the truth of the facts on which it was based were not controverted and seriously questioned here.

It is insisted by the complainants:

(1) That their proofs in the present case show the falsity of the testimony on which it is attempted to establish the existence of the Pernot machine, or, at least, that part of it embracing the mechanism which anticipates the Spring patent anterior to the date of the complainants' invention. (2) That, even if its prior existence is admitted, the mechanism is not an anticipation of the specifications and claims of the Spring patent.

1. As to the first point, respecting the actual existence of the Pernot machine, it is a well-settled principle that the burden of proof is on the defendant. Pernot, the alleged inventor, testifies that he completed and used it as early as the year 1853, for turning needles, and that it was substantially in the same condition and contained the same mechanism for curving the shoulders and sharpening the points of the needles at the time of his examination as a witness in this case, as when it was finished in 1853.

The claim of the Spring patent is for the combination of a griping chuck, by which an article can be so held by one end as to present the other free to be operated upon with a rest preceding the cutting tool, when it is combined with a guide-cam or its equivalent, which modifies the movement of the cutting tool, all operating together for the purpose set forth. The distinguishing features of the patent are the cams or formers for turning the curved shoulders and the points of the sewing-machine needles.

The patentees, in their specifications, state that the pattern, $e^1$, which is adjustable by means of the set-screw, $n^1$, is pivoted in $q$, and serves to shape the shank, while the pattern, $o^1$, which is adjustable along the length of $q$, as well as outward from it, serves to form and shape the point.

Is there any mechanism found in the Pernot machine which produces either of these results, and if so, at what time do the proofs show that it was first attached? The curved or rounded shoulder to a needle made in this machine, is, doubtless, formed by the wedge, $a$, which operates to draw back the knife as it approaches the griping chuck; and Pernot, in his examination, states that although he never pointed the needles in the practical use of his lathe, the mechanism was capable of such adjustment that the points could be readily turned.

We are then brought to the inquiry, whether the wedge, $a$, and the bar, $b$, were in the Pernot lathe prior to the Spring invention in 1857? The first witness upon this point is the complainants' expert, Hoadley. He considers the wedge, $a$, and the bar, $b$, an evident

after-thought, worked into the otherwise completed lathe at some time subsequent to its original completion and operation. This opinion is founded—*First*, upon the examination under a glass of the six needles, marked "Pernot needles, Ex. 14," which had been exhibited by Pernot, in a former suit, as the product of his machine, and as proof that he had made upon the said machine needles with curved or rounded shoulders and sharp points, and which, the witness thought, gave unmistakable evidence of being finished by hand-tooling, both as to the shoulders and the points. And, *secondly*, upon the striking differences in the execution of the work on different parts of the lathe; "all parts," says the witness, "being well formed, accurately fitted, and well finished, except the important bar, *b*, and its clamp-screws, *c c*. These are coarse, rude, and devoid of finish, and have all the characteristics of a subsequent addition and of a temporary makeshift." And, *thirdly*, upon the conviction that the machine had been originally constructed for turning needles without points, and to a square shoulder, as shown by the presence of the diagonal set-screw, R, which could have no other purpose in connection with the organization of the lathe. He is strongly corroborated in all these particulars by the testimony of O. S. Hosmer and Edwin Strain, gentlemen of long experience in the manufacture of sewing-machine needles, and whose cautious methods of testifying have not failed to make a favorable impression upon the mind of the court.

But the most remarkable evidence in regard to the Pernot machine came out in the final examination of Alonzo Taylor and Joseph Bellows. These were first offered by the defendant as witnesses to prove the product of the lathe previous to the date of the Spring invention. Taylor, in testifying for the defendant, said that he first saw the Pernot machine in 1855, and that needles were produced by it with rounded or tapering shanks. But when he was afterwards recalled by the complainants he stated that his previous testimony had been given under a misapprehension of the 'matter in controversy; that he thought the suit had been brought for the infringement of a patent for a tapered shank needle, and not for a machine which could make one; that he always supposed that the tapering shanks of the needles made on the Pernot machine were turned and formed by hand-tooling; that when he first saw the machine, in 1855, it had neither the wedge, *a*, nor bar, *b*, nor any other device which could be used for forming a tapering shank or sharp point on the needle. He is confirmed by Bellows, who testifies to the alteration of and addition to the machine. He says that he went

into the employ of Pernot in the fall of 1855 or spring of 1856, and continued with him for several years; that he was his foreman in 1858, and was married on the seventeenth of June of that year, and that the wedge and bar were added to the machine after that date; that before these were attached Pernot made his needles by turning up to a square shoulder, and then filing them and grinding them down on an emery wheel.

Such testimony throws serious doubts upon the truth of the statement of Pernot and his brother-in-law, Davis, that as early as 1853 the former invented and used in connection with his lathe the mechanism needed to taper the shoulders and sharpen the points of needles produced by his machine. In view of the great commercial value of such a discovery in forming sewing-machine needles, it seems incredible that, after making the invention, he should so soon have abandoned it, and returned to the old and more imperfect and costly methods of producing them.

2. In consequence of such improbability, we have been led to carefully consider the evidence which induced the learned judges who decided the former suit to hold that the Pernot machine was in fact an anticipation of the Spring invention, and we are bound to say, although with great diffidence, that we question the correctness of their conclusions. Spring's patent claimed to be and is an organized mechanism, capable of completely shaping sewing-machine needles, throughout their entire length from point to hilt, at one operation. If Pernot's machine, under any of the proved circumstances of its organization and use, ever accomplished this, which we seriously doubt, it performed its work so imperfectly that the inventor laid no stress upon it, and preferred to sharpen his needles by hand, and soon laid aside the supplementary mechanism which had reference to the forming of a tapering shank. If it existed at all, its life was so fitful and uncertain that it must be put in the category of abandoned experiments; and such a failure ought not to be regarded as an anticipation of the invention of the Springs, who, it is conceded, were original inventors, and who, in our judgment, were the first inventors of a successful machine which was capable of turning the barrel, point, and curved shoulder of a sewing-machine needle at one continuous movement of the cutting tool.

It only remains to consider the question of infringement, in proving which the burden is upon the complainants. The evidence of infringement is slight. It rests mainly upon the testimony of John Armstrong, who commenced work with the inventors of the complain-

ants' machine in 1858; continued in their employ until 1862, then went to the war; came back to them in 1865, and remained with them until 1869, during which times he worked and became well acquainted with the Spring machine. He afterwards went into the employ of the defendant corporation in July, 1876, and remained there 10 months. While with them he saw in use by the defendant company machines operating to turn sewing-machine needles, having substantially the same parts or elements that he was familiar with, in the Spring machine, to-wit, a griping-chuck, which held one end of the wire, leaving the other end free to be operated upon, and the wire passing through the dies or rest, which was preceded by a knife that was governed by cams or a former.

In view of the decision of the supreme court in *Bennet* v. *Fowler*, 8 Wall. 445, this proof, if not rebutted, would seem to be sufficient. In that case the proof of infringement was that the defendant used machines substantially like the complainants, and the court held that if the defendant intended to contest the point he should have introduced proof to that effect.

Upon the whole case, we are of the opinion that a decree should be entered for the complainants